### Fife v. Commonwealth.

June 6, 1939.

W. J. Baxter, Judge.

John Noland for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

The grand jury of Madison county indicted Leonard Bronston and Charles Irvine Fife, charging them with the crime of feloniously and maliciously assaulting another, Tine Tudor, with an offensive weapon, to-wit, a

pistol, with intent to rob and demanding of said Tudor property of value, to-wit, money. The indictment charged in the second count that Bronston actually committed the robbery and that Fife was then and there present or near enough to and did aid, assist and abet Bronston in the commission of the offense.

Bronston pleaded guilty and was sentenced to the penitentiary for 21 years. Fife pleaded not guilty and upon trial before a jury he was convicted and sentenced to the penitentiary for 21 years. Fife has appealed.

There is no evidence tending to show that Fife was present and actually participated in the robbery and the only direct evidence connecting him with the offense is that of Bronston, the accomplice. It is insisted for Fife, the appellant, that the evidence of the accomplice was not sufficiently corroborated to sustain a conviction as provided in Section 241 of the Criminal Code of Practice. The evidence was not reported by the court reporter, but it is agreed upon in narrative form and incorporated in the record in the form of a bill of exceptions. The substance of the evidence, as agreed upon, is that Tine Tudor testified that on the ——— day of ———, 1938, on a Saturday night, between the hour of 7 and 8 o'clock, Fife came into his, Tudor's place of business, which was a filling and supply station, on the corner of Hill and Steep Streets in Richmond, Kentucky, and purchased a pepsacola and that he appeared to be nervous and in a hurry and drank only a portion of the pepsacola and immediately left the building; that immediately or within a short time thereafter, Bronston came into the building or place of business and after looking around for a second or two, he presented a pistol at Tudor and demanded of him his money and forced him to deliver to Bronston the sum of $37.80, that being the amount which he then had in his cash drawer, and Bronston immediately left the building. Tudor did not see Fife at the time the robbery occurred.

Bronston testified for the commonwealth and said that he and Fife had on more than one occasion, several days before the robbery, conversations about robbing the particular place in question and Fife had told him that if he, Bronston, would get a pistol, he would help and that it would be an easy place to rob; that on the particular night when the robbery occurred Fife went into the building and came out and told him that the way

was clear and he, Bronston, went in with the pistol and demanded money of Tudor and obtained the sum of $37.80; that he came out and met Fife on Altamont Street about a block and a half from the filling station, and they went into a vacant house and divided the money and then separated and he did not see Fife until after his arrest on the following Monday. He said he did not remember how much money he gave Fife, but that he left him and came on down town and engaged in a crap game for the rest of the night and was arrested on the following day by police officers of the city of Richmond and told them in substance the facts indicated above. Bronston admitted that he had been previously convicted on a charge of grand larceny and had served his sentence in the state penitentiary.

Three or four witnesses testified that they saw Bronston and Fife in a conversation at a house on Altamont Street in Richmond, being the same house mentioned by Bronston, and when one of the witnesses, D. C. Gasset, the owner of the house, asked Fife what they were doing there, he, Fife, said he was looking for some whiskey. It was shown that the house was vacant. However, these witnesses stated that they did not see any money pass between Bronston and Fife, but only saw them there in conversation.

After Bronston made his confession and implicated Fife in the robbery, the police officers of the city of Richmond set out in search of Fife, but failed to find him in Richmond, and upon learning that his mother lived at Lexington, Kentucky, they telephoned the police officers of Lexington and the latter apprehended Fife and arrested him. He had $1.75 on his person at the time and told them that it was money that he had worked for. Fife was taken back to Richmond and when confronted with Bronston's confession, he denied each and every statement made by Bronston in reference to his connection with the robbery.

Fife, testifying in his own behalf, admitted that he was in the filling station on the night of the robbery at about the hour or time testified to by Tudor and admitted that he bought a bottle of pepsacola and drank it and left the building and went down in the neighborhood of Altamont Street, and admitted that he was with Bronston at the vacant house of D. C. Gasset and told Gasset that he was looking for some whiskey, but denied

that he knew anything about Bronston having committed the robbery and also denied each and every statement made by Bronston tending to connect him with the robbery or having any knowledge thereof. He also testified that when he left the building where Tudor was robbed, one Mr. Boles was standing in front of the building, but that he did not see Bronston near the building or at any place at that time. Tudor was called in rebuttal and testified that Mr. Boles was not in the building or in front of it at the time Fife entered and left the building. Boles testified that he did not see Fife or Bronston enter the building and that he left the building sometime near .7 o'clock. This is the substance of the evidence on the whole of the case.

Counsel for appellant strenuously insists that the circumstantial evidence relied on by the commonwealth does not sufficiently corroborate the evidence of the accomplice and that the court should have sustained appellant's motion for a directed verdict in his favor. In an effort to sustain his position, counsel for appellant cites and relies upon numerous cases, among which, and we may say, the strongest one in favor of appellant, is the case of Dezarn v. Commonwealth, 255 Ky. 683, 75 S. W. (2d) 338.

In that case one Dewey Gibson and Dezarn were indicted for burning a barn and Gibson pleaded guilty and implicated Dezarn. It appears that the only evidence tending to corroborate Gibson, the accomplice, was that on the morning after the night the barn was burned Gibson and Dezarn were seen riding on a horse on the public highway towards Manchester. That night Dezarn was seen going back into the country towards where Gibson lived, but Dezarn also lived in the same neighborhood; on the next morning Dezarn went to where Gibson lived and called for him and upon being informed that Gibson was not there Dezarn said he wanted Gibson to do some work for him that day.

It will be noticed that Dezarn was not seen in or near the barn immediately before or after it was burned, but was only seen traveling the country road towards Manchester sometime before the barn was burned. If Dezarn had come into the barn immediately before it was burned, appearing to be nervous or unnatural and hurriedly departed therefrom and then Gibson had immediately gone into the barn and set it on fire and there-

after had been seen with Dezarn in a secluded or isolated place within a few hundred feet of the barn and had given no reason or excuse for being there other than a vague statement that he was looking for whiskey, a different state of facts would have been presented and no doubt the result of that appeal would have been different. It will thus be seen that the corroborative evidence in the present case is much stronger than that in the Dezarn case and, therefore, that case does not support appellant's contention.

In the case of Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, a conviction was upheld by this court where the only evidence tending to corroborate that of the accomplice, Warfield, was that Williams and Warfield were in the city of Hopkinsville on the day the killing occurred and were near the scene of the killing at the time it occurred, as testified to by Warfield, and that two negroes looking like them were seen near and going to the place at about the time the shot was fired resulting in the killing. It is our view that the evidence in that case tending to corroborate that of the accomplice was no stronger, if indeed as strong, as the corroborative evidence in the present case.

It is our view that the evidence of the accomplice, Bronston, was sufficiently corroborative to sustain the verdict of the jury.

It is next insisted that the court should have instructed the jury under Section 1159a of the Kentucky Statutes, as well as Section 1160 of the statutes, under which the indictment was drawn, since the former section carries a less penalty for aiding another person in the commission of robbery than the latter which applies to persons who actually commit robbery. It must not be overlooked that the last sentence in Section 1159a has reference to accessories, aiders and abettors after the fact. The second count of the indictment charged appellant with being an accessory, aider or abettor before the fact. It is a well known rule that an accessory before the fact may be indicted and punished as a principal. This rule is too well known to require citation of authority.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.