## Orndorff v. Commonwealth.

May 18, 1943.

C. B. Crossland, Jr., for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The grand jury of McCracken county returned an indictment against appellant and Robert Broyles, Jr., charging them with the crime of storehouse breaking. Appellant was tried separately and the jury found him guilty and fixed his punishment at confinement in the state penitentiary for a period of five years. From the judgment entered upon that verdict he has prosecuted this appeal. Broyles testified for the Commonwealth, stating that he and appellant committed the offense charged in the indictment. The sole ground relied upon for reversal is whether or not the evidence of Broyles, the accomplice, was sufficiently corroborated so as to sustain a conviction as is required under the provisions of section 241 of the Criminal Code of Practice.

On the night of December 19, 1942, the grocery store of Rollie Peck, in the city of Paducah, was broken into and certain merchandise taken therefrom aggregating the value of about $275. It appears that about the time of the commission of this offense a warrant of arrest had been issued for appellant and Broyles charging them with attempted rape, and the police officers of the city of Paducah, in search of appellant and Broyles on that charge, located them at the home of Tommie Fox, who was absent from his home at that time and confined in a hospital, but he had given Broyles permission to stay in his home while he, Fox, was in the hospital. When the officers arrived at the Fox home at about 8 a. m., they knocked on the door and informed the occupants that they were officers and asked them to open the door. One of the officers looked through a window and saw appellant and Broyles in bed and Broyles got out of the bed and opened the door and as the officers entered the room appellant went out through the window and made his escape at that time but was later apprehended. Later

in the day a search of the Fox home was made by the officers and numerous articles of merchandise, identified by Peck as a part of the goods which had been taken from his store, were found in the attic of the building and a clock, some socks and cigarettes near the bed where appellant and Broyles were sleeping, and a pistol under the pillow. These facts were testified to by the officers and Mr. Peck and are not in dispute.

Broyles, the accomplice, testified that on the night of December 19 he and appellant, whom he had known for about six years, got together and decided to break into Peck's store and went to the store between 1:30 and 2 a. m. and made their entrance into the store through a window. He said appellant first tried to break the window and then he, Broyles, took a brick and broke it and they then entered the store. He said they could not find any empty sacks and they cut the bean sacks open and poured the beans on the floor and filled the sacks with cigarettes, meat, pocket knives, clothing and a radio, and took the merchandise down town and hid it under a house that night. He said that they had information that some girls had sworn out a warrant for them and they stayed only one night at the house where they first hid the merchandise and then took it to the Fox home, where they were found by the officers about a week thereafter. He said that appellant put part of the merchandise in the attic of the Fox home where it was found, as described by the officers. He further said that in the meantime appellant had sold the radio, meat, and perhaps other articles of merchandise, and that he, Broyles, got his share of the money but he did not know the names of the persons to whom appellant sold the merchandise. He said that when the officers arrived at the Fox home they knocked on the door and said "Open up it is the law," and he got up and went to open the door and appellant jumped through the window and ran. He said that the pistol and clock found in the room, referred to by the officers, did not come from Peck's store but the rest of the merchandise which was around the bed, consisting of socks, eight packages of cigarettes and the sacks, were the property of Peck which they had taken from his store.

Appellant, testifying in his own behalf, said that he and Broyles had had some trouble with some girls and one of them had said that they were going to have them

arrested and he went to the Fox home to spend the night with Broyles. · He said he knew about the warrant which had been issued for him concerning the girls, and when the officers arrived at the Fox home he jumped through the window and ran away from the officers rather than be arrested on that warrant. He denied that he had anything to do with breaking into Peck's store or carrying any merchandise therefrom or having any connection with it in any manner, and also denied that he carried or helped carry any of the merchandise to the Fox home or that he knew anything about it being there. He said that on the night preceding the morning the officers found him at the Fox home he and Broyles went to the picture show and then went to the Fox home about 1 a. m. to hide from the officers on the charge the girls had made against them. He said that the pistol found under the pillow on the bed was not under his pillow and he did not see it at all, and that he did not know where the suit case or the other merchandise found in the room came from.

The argument for appellant is that there is no evidence direct or circumstantial which tends to corroborate the evidence of Broyles, the accomplice. It is insisted that Broyles was in possession of the Fox home and appellant was only a guest or invitee of Broyles, and hence the stolen merchandise was in the possession of Broyles rather than the appellant. If all the merchandise found in the Fox home had been concealed in the attic or other parts of the house other than the bedroom occupied by appellant and Broyles, it might be reasonable to believe that appellant knew nothing about it being there. But, in the circumstances, the jury had the right to believe that appellant did know of the cigarettes, socks and other articles of merchandise being in the room near the bed where he slept. He admitted that he was with Broyles the night before the arrest was made and went to the Fox home with him at a late hour in the night to evade the officers. It appears that he was using the Fox home as a haven from the officers rather than as an invitee or guest in the usual sense of the words. In the circumstances it might be said that the stolen merchandise was in the joint possession of appellant and Broyles. Appellant also admitted on cross-examination that he had been twice convicted of a felony, one for robbing a post office and another for storehouse breaking, and he was then on parole on the post office charge.

348

In Williams v. Com., 257 Ky. 175, 77 S. W. (2d) 609, it was held that any evidence tending to corroborate the testimony of an accomplice is sufficient to support a conviction, although the corroborative evidence may not be of itself sufficient to establish guilt. That case has been followed consistently by this court in numerous subsequent cases, including Fife v. Com., 279 Ky. 14, 129 S. W. (2d) 983. It is now the established rule that any evidence of a probative nature arising to the dignity of evidence tending to corroborate an accomplice is sufficient to sustain a conviction. We conclude, therefore, that under the proven and admitted facts, viewed in connection with attendant circumstances, there was some evidence tending to connect appellant with the commission of the offense, aside from the evidence of the accomplice.

Judgment affirmed.